Gladys W. REESE and P. B. Bell, d/b/a Reese & Bell, Appellants,

v.

W. C. GRIFFIN, Jr., Appellee.

No. 6827.

Court of Civil Appeals of Texas.

Texarkana.

June 23, 1955.

Rehearing Denied July 21, 1955.

Barnes & Barnes, Terrell, for appellant.

Gordon R. Wellborn, Rex Houston, Henderson, for appellee.

DAVIS, Justice.

This is an appeal from an order overruling the plea of privilege of appellants. Appellee-plaintiff, W. C. Griffin, Jr., a resident of Rusk County, sued appellants-defendants, Gladys W. Reese and P. B. Bell, residents of Kaufman County, in Rusk County on an oral contract for the purchase of turkeys. The parties will be referred to as in the trial court.

Plaintiff alleged in his first amended original petition that on or about the 16th day of November, 1954, plaintiff and defendants, through defendant P. B. Bell, made and entered into an agreement in Rusk County whereby defendants were to purchase from plaintiff all of his turkeys which the defendants picked up in Rusk County during the months of November and

**354**

December, 1954, and that defendants would pay plaintiff 31 cents per pound for all turkey hens and 25 cents per pound for all turkey toms that defendants picked up in Rusk County. Plaintiff further alleged that the defendants agreed to send trucks to plaintiff's farm in Rusk County, pick up said turkeys, cull them there and pay the aforesaid prices for all of such turkeys. He alleged that the defendant Bell knew at the time of making such representations and promise that the "defendants did not intend to pay such price but intended to carry all the turkeys to Kaufman, kill them, *and then decide* (italics ours) to re-grade them and pay a substantially lesser sum per pound for said turkeys." He further alleged that the representations of Bell were false, and Bell knew they were false but plaintiff believed and relied upon such representations. Plaintiff alleged that the representations were willfully and fraudulently made by Bell in Rusk County for the purpose of inducing plaintiff to rely thereupon.

Plaintiff alleged that he delivered to defendants 38,680 pounds of turkey hens of the value, at 31 cents per pound, of $12,990.80, of which $9,407.20 remains due and unpaid; and there was $168 still due and unpaid for turkey toms.

Plaintiff also alleged trespass by conversion in an alternative plea. There was no alternative prayer for relief.

Defendants filed their plea of privilege, jointly, to be sued in Kaufman County and specifically denied the allegations of fraud in such plea. Plaintiff filed his controverting plea and first amended original controverting plea to the plea of privilege setting up Sections 7 (Fraud) and 9 (Trespass) of Article 1995, R.C.S., Vernon's Ann.Civ.St., as exceptions to the general venue statute.

At the conclusion of the testimony, the court granted plaintiff leave to file his first trial amendment to his first amended original petition wherein he alleged that a trespass by conversion was committed by defendants in Rusk County. Such allegation was also made in the alternative plea in such amended petition as well as the allegation that defendants "carried them to Kaufman County and converted same to their own use and benefit." Such allegations are inconsistent and should have been stricken on motion had such motion been made. Petty v. First National Bank of Quitman, Tex.Civ.App., 278 S.W.2d 361. Plaintiff was then permitted to file trial amendment to his first amended original controverting affidavit in which he adopted in his "controverting affidavit" the trial amendment. He had already abandoned his controverting affidavit by filing his first amended controverting affidavit. The trial amendments were filed over the objections of defendants, but the trial amendment to the first amended controverting affidavit amounts to nothing because plaintiff could not adopt a pleading which had been supplanted by an amended plea. Hunt v. Employers Reinsurance Corp., Tex.Civ.App., 219 S.W.2d 483, writ ref., n. r. e.; Hawkins v. Collier, Tex.Civ.App., 235 S.W.2d 528, no writ history.

The evidence shows that defendants were contacted by plaintiff by way of long distance telephone on Friday or Saturday prior to November 10, 1954, for the purpose of trying to sell defendants a large number of turkeys. In response to the call, defendant Bell went from Kaufman to Henderson in Rusk County on or about the 10th day of November, 1954, and there entered into an agreement to buy the turkeys. Plaintiff contends that the price agreed upon was as pleaded in his petition, 31 cents per pound for all hens and 25 cents per pound for all toms. He is supported in this contention by one witness, J. J. Cochran, a feed dealer, who was present and heard the trade. Bell admits that he agreed to buy all No. 1 hens at 31 cents per pound and all No. 1 toms at 25 cents per pound.

On the 16th of November, defendants sent a truck to plaintiff's farm, picked up 350 hens for which he paid 31 cents per pound and sent plaintiff a check for $1,785.60 on the following day; they picked up an additional 350 hens on the 17th for which they paid 31 cents per pound and sent a check for them in the sum of $1,798 on November 18th, and picked up an additional

350 hens. When defendant started to dress the third load, they discovered they were "blue-backs" or No. 2's and contacted plaintiff and told him about it, and further told plaintiff that they could not use the hens at the price of 31 cents. Plaintiff does not deny the conversation. Defendants contend that they agreed to take the "blue-backs" or No. 2 hens, process them and market them for plaintiff, or pay the No. 2. price for them, and that plaintiff agreed to such arrangement because, as plaintiff testified, the turkeys had to be fed and "everybody knows that is an expense."

Defendants did not pay for the load of hens of November 18th, and went back on December 1st and picked up another load; on the 2nd they picked up two loads; and on the 3rd they picked up another load, all hens. They did not pay for any of them. Then they started getting the toms on December 7th, at 240 a load until they were all taken, except 44 the last time which plaintiff delivered to defendants at Kaufman. Defendants paid for all the toms except $168 worth which they claim were dead upon arrival at their place of business.

There is a sharp conflict in the testimony as to where the turkeys were to be culled.

Plaintiff also sued for an attorney's fee of $2,000 as authorized by the provisions of Article 2226, R.C.S., Vernon's Ann.Civ.St., founded upon a sworn account.

We believe the foregoing fairly states the pleadings and the evidence in the case. Trial on the plea of privilege was before the court who overruled the plea, hence the appeal.

Defendants bring forward five points of error. By points 1, 2 and 3 they complain of the action of the trial court in overruling their plea of privilege, because: (1) Plaintiff's suit was for the recovery of an alleged balance due under an oral agreement; (2) plaintiff's suit being for the recovery of the balance alleged to be due him on an oral contract, his allegations of fraud, became immaterial; and (3) the allegations of fraud are unsupported by any evidence.

As we view the pleadings and evidence, we find it unnecessary to determine the question of whether actionable fraud is established by the record. Plaintiff declared upon a contract and sued for the balance due thereon according to his version of the same. He did not elect to cancel the contract and sue for damages, he sued upon an account and also sought attorney's fees thereunder. He would not be entitled to recover an attorney's fee in a suit for damages for fraud. Plaintiff testified that he was suing for the balance due him under the oral contract. Therefore, we find that the suit is one based upon a sworn account for the balance due upon the contract; and even though the contract may have been induced by fraud, where the innocent party elects to sue on the contract rather than for his damages for the fraud, he cannot rely on the fraud to fix the venue of his suit. Bunger v. Campbell, Tex.Civ. App., 183 S.W.2d 1001; Neal v. Barbee, Tex.Civ.App., 185 S.W. 1059; Dowell v. Long, Tex.Civ.App., 219 S.W. 560; Henson v. Henson, Tex.Civ.App., 181 S.W.2d 285; Powell v. Goldsmith, Tex.Civ.App., 164 S.W.2d 45; Hopcus v. Treadway, Tex. Civ.App., 244 S.W.2d 857; and Santa Maria Water Control & Improvement Dist. No. 4 v. Towerage Equipment Co., Tex.Civ.App., 241 S.W.2d 755.

We are unable to see any distinct difference in principle between this case and the foregoing authorities in so far as the question of venue is concerned. Therefore, it necessarily follows that points 1, 2 and 3 must be sustained.

By points 4 and 5 defendants complain of the action of the trial court in overruling his plea of privilege because plaintiff's suit being one to enforce an oral agreement, his alternative plea of conversion would not place venue in Rusk County, and the allegation of conversion is wholly unsupported by the evidence. With this contention we agree. And the authorities hereinabove cited support our conclusions on these points. Points 4 and 5 are sustained.

Plaintiff relies upon the case of Manziel v. Williams, Tex.Civ.App., 262 S.W.2d 437,

in support of his contention that actionable fraud was shown to have been committed in Rusk County. In that suit, plaintiff based his suit solely upon damages for the fraud and did not seek to enforce the contract. There is quite a difference in the principles involved in the two suits, and that case is not in point here.

For the errors hereinabove pointed out, the judgment of the trial court is reversed and judgment is here rendered sustaining the plea of privilege of said defendants.

Reversed and rendered.